# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

14-5085

BANNUM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

DISMAS CHARITIES, INC.

Defendant-Appellee,

Appeal from the United States Court of Federal Claims in case no. 14-CV-140,
Judge Mary Ellen Coster Williams

## BRIEF OF PLAINTIFF-APPELLANT BANNUM, INC.
### (NON-CONFIDENTIAL)

Joseph A. Camardo, Jr., Esq.
CAMARDO LAW FIRM, PC
127 Genesee Street
Auburn, New York 13021
Tel: (315) 252-3846
Fax: (315) 252-3508

July 24, 2014

Attorneys for Plaintiff-Appellant

Form 9

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Bannum, Inc.                                    v.  United States

No. 14-5085

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Bannum, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Bannum, Inc.

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Bannum, Inc.

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

_____

4. ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Joseph A. Camardo, Jr., Camardo Law Firm, P.C.

_____

| 5/27/2014 | /s/ Joseph A. Camardo, Jr. |
|---|---|
| Date | Signature of counsel |
| | Joseph A. Camardo, Jr. |
| | Printed name of counsel |

Please Note: All questions must be answered

cc: Russell J. Upton _____

---

124

**NON-CONFIDENTIAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

STATEMENT OF RELATED CASES ...............................................1

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES ..........................................................2

STATEMENT OF THE CASE .............................................................2

STATEMENT OF THE FACTS ...........................................................2

SUMMARY OF THE ARGUMENT ...................................................5

ARGUMENT ........................................................................................5

    I.    Standard of Review.........................................................5

    II.   Bannum Did Not Lack Standing ....................................6

CONCLUSION ...................................................................................11

### CONFIDENTIAL MATERIAL OMITTED

The only confidential material omitted is located at page 4 of the COFC Opinion included in the appendix. This material relates to pricing.

NON-CONFIDENTIAL

# TABLE OF AUTHORITIES

**Cases**                    **Page(s)**

ABF Freight System, Inc. v. United States ...............................................7
55 Fed.Cl. 392 (2003)

Alfa Laval Separation, Inc. v. United States...........................................9
175 F.3d 1365 (Fed.Cir.1999)

Allied Tech. Grp., Inc. v. United States ..................................................9
94 Fed.Cl. 16 (2010)

Am. Fed'n of Gov't Employees v. United States....................................5
258 F.3d 1294 (Fed.Cir.2001)

Blue & Gold Fleet, L.P. v. United States ................................................8
492 F.3d 1308 (Fed.Cir.2007)

COMINT Sys. Corp. v. United States......................................................8
700 F.3d 1377 (Fed.Cir.2012)

Dyonyx, L.P. v. United States.................................................................10
83 Fed.Cl. 460 (2008)

Impresa Construzioni Geom. Domenico Garufi v. United States...........7, 9-10
238 F.3d 1324 (Fed.Cir.2001)

Info Tech. & Applications Corp. v. United States ..................................11
316 F.3d 1312 (Fed.Cir.2003)

ManTech Telecom. and Info. Sys. Corp. v. United States......................11
49 Fed.Cl. 57 (2001)

MCI Telecommunications Corp. v. United States ...................................6
878 F.2d 362 (Fed.Cir.1989)

Orion Tech., Inc. v. United States .........................................................5-6
704 F.3d 1344 (Fed.Cir.2013)

**NON-CONFIDENTIAL**

Rex Serv. Corp. v. United States...........................................................5, 6, 10
448 F.3d 1305 (Fed.Cir.2006)

Weeks Marine, Inc. v. United States....................................................6, 7-8
575 F.3d 1352 (Fed.Cir.2009)

XTRA Lease, Inc. v. United States ........................................................7
50 Fed.Cl. 612 (2001)

## Statutes

28 U.S.C. § 1295 ................................................................................1

P.L. 108-79, the Prison Rape Elimination Act of 2003 ..........................*passim*

## Other Authority

FRAP 4 ...............................................................................................1

RCFC 58.1 ..........................................................................................1

NON-CONFIDENTIAL

## STATEMENT OF RELATED CASES

There is a related case to this matter. Court of Appeals, Federal Circuit Case No. 14-5086, Bannum, Inc. v. United States has been noted as a companion case, and has been assigned to the same merits panel for oral argument.

## JURISDICTIONAL STATEMENT

This appeal is taken from the March 11, 2014 Judgment entered by the United States Court of Federal Claims ("COFC"), case number 1:14-cv-00140-MCW. A Memorandum Opinion and Order of Dismissal granting the Government's motion to dismiss the complaint was issued by Judge Mary Ellen Coster Williams on March 7, 2014. The Judgment is a "final judgment," and the Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. §1295(a)(3), which provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction...of an appeal from a final decision of the United States Court of Federal Claims." The instant appeal was timely under Rule 58.1 of the Rules of the COFC and Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, as it was taken within 60 days after receipt of the March 11, 2014 Judgment of the COFC.

**NON-CONFIDENTIAL**

## STATEMENT OF THE ISSUES

This issue in this case are: (1) whether Bannum had standing to challenge the award of a contract where it submitted a firm price which was considered by the Government in its Source Selection Decision.

## STATEMENT OF THE CASE

This is an appeal from a Memorandum Opinion and Order of Dismissal of the COFC, dismissing Bannum's protest on the grounds that Bannum lacked standing, and that as such, the Court did not have subject-matter jurisdiction, and entering Judgment on behalf of the Government and Defendant-Intervenor Dismas Charities, Inc., under Solicitation No. RFP-200-1168-SE.

## STATEMENT OF THE FACTS

On February 22, 2012, the BOP issued RFP 200-1168-SE ("RFP" or "Solicitation"), requesting proposals to provide Residential Reentry Center ("RRC") services for male and female Federal offenders located in the Tupelo, Mississippi area. JA 10001-03, 100047.

The RFP provided for the award of a firm-fixed-price, indefinite delivery contract for a two-year base period, with three one-year options. JA 10006.

The proposals were to be evaluated with regard to Past Performance, Technical/Management, and Price, with Past Performance and

**NON-CONFIDENTIAL**

Technical/Management being significantly greater than price, and Past Performance being more important than Technical/Management. JA 10036.

On February 28, 2013, the BOP issued Amendment 005 to the Solicitation, incorporating P.L. 108-79, the Prison Rape Elimination Act of 2003 ("PREA") into the contract. JA 10378-79.

On or about April 23, 2012, Plaintiff and Intervenor Dismas Charities, Inc. ("Dismas") submitted proposals. JA 10388, 10551.

After multiple discussion notices and final proposal revisions, on February 28, 2013, the BOP issued request for Final Proposal Revision #3, asking that offerors sign and return Amendment 005 to the Solicitation, incorporating PREA. JA 11104-05.

Bannum's response to the request for Final Proposal Revisions was labeled "AGENCY PROTEST," and included the following footnote:

> However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 5 that BOP presented with this FPR #3. As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement. Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort. Bannum hereby requests that discussions continue on this requirement

and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

JA 11109, fn. 1 (emphasis added). Bannum also noted that in the event that the BOP decline to provide additional information, discussions, and guidance, and required that Bannum execute the amendment, Bannum indicated that it protests the inclusion of PREA into the solicitation. JA 11113-14.

Bannum executed Amendment 005 and included it with its response, with a handwritten note on the amendment stating: "Subject to and limited by Bannum's response to FPR # 3 dated 3/7/2013 and submitted herewith; also subject to Bannum's reservation of all rights and protest." JA 11116.

On July 3, 2013, the BOP issued request for Final Proposal Revision #4. JA 11125-26. Bannum responded, again including the footnote quoted above. JA 11152.

The BOP never responded to Bannum's protest/objections regarding the PREA implementation.

The Source Selection Decision, dated July 19, 2013, rated Bannum as Blue/Very Good for Past Performance (JA 11162), Green/Acceptable for Technical/Management (JA 11176), with a total price of $5,339,200.00 (JA 11191). Dismas was rated Blue/Very Good for both Past Performance (JA 11169) and Technical/Management (JA 11184), with a price of $5,212,222.40 (JA 11191).

The BOP awarded the contract to Dismas on August 26, 2013. JA 11209.

4

**NON-CONFIDENTIAL**

## SUMMARY OF THE ARGUMENT

The Lower Court erroneously granted the Defendant's Motion to Dismiss. The Lower Court held that Bannum lacked standing because it "lacked a direct economic interest" in the contract, because it conditioned its bid on costs of implementing PREA requirements. This finding is erroneous because (1) there is an exception to the "direct economic interest" standard, where, as here, the protestor challenged the terms of the solicitation itself, and (2) even if the "direct economic interest" standard did apply, Bannum's bid was considered by the BOP on its merits, waiving any alleged failure to strictly comply with the solicitation requirements.

## ARGUMENT

### I.    Standard of Review

Whether a party has standing to sue is a question of law that the Court reviews de novo. *See, e.g.*, <u>Am. Fed'n of Gov't Employees v. United States</u>, 258 F.3d 1294, 1298 (Fed.Cir.2001).

In a bid protest, only an "interested party" has standing to challenge a contract award. <u>Rex Serv. Corp. v. United States</u>, 448 F.3d 1305, 1307 (Fed.Cir.2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. <u>Id.</u> Thus, a party must show 1) that it is an actual or prospective bidder and 2) that it has a

5

direct economic interest. <u>Orion Tech., Inc. v. United States</u>, 704 F.3d 1344, 1348 (Fed. Cir. 2013).

With respect to being an actual or prospective bidder, "in order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation." <u>MCI Telecommunications Corp. v. United States</u>, 878 F.2d 362, 365 (Fed. Cir. 1989) (emphasis in original).

Generally, to prove the existence of a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. <u>Rex Serv.</u>, 448 F.3d at 1308. An exception to that standard is when a prospective bidder challenges the terms of the solicitation itself, prior to actually submitting a bid. <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1361 (Fed.Cir.2009). In that circumstance, the protestor can establish standing by demonstrating that it suffered a "non-trivial competitive injury which can be redressed by judicial relief." <u>Id.</u> at 1361–62.

## II.    Bannum Did Not Lack Standing

The Lower Court held that Bannum did not submit a proposal for "an indefinite delivery, requirements type contract, with firm-fixed unit prices" that complied with all mandatory requirements, because its offer was conditional on the costs of compliance with PREA. As such, the Lower Court held that Bannum lacked a direct economic interest in the contract. The Lower Court therefore held

that Bannum lacked standing to bring the protest, and granted the Defendant's

Motion to Dismiss, without reaching any decision on the merits.

Bannum contends that this decision was erroneous. Even where a bid is

deemed improperly qualified, the BOP would be obligated to rebid the contract,

and Bannum would have the opportunity to compete in the resolicitation. Impresa

Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334

(Fed.Cir. 2001); see also XTRA Lease, Inc. v. United States, 50 Fed.Cl. 612, 618

(2001).

As a matter of fact, the COFC, in ABF Freight System, Inc. v. United States,

55 Fed.Cl. 392 (2003), found that a party was a prospective bidder with standing to

protest where it participated in the bid preparation process before deciding against

submitting its bid based on alleged improprieties in the solicitation. Here, Bannum

is a contractor who has provided RRC services to the BOP for over 20 years,

participated in the bid preparation process, and repeatedly advised the BOP that

additional information and discussions would be required with respect to

Amendment 005, incorporating the Prison Rape Elimination Act of 2003

("PREA") before Bannum could formulate a cost or price proposal for its

implementation. JA 11109-14, 11152-53.

This is exactly the type of situation that was contemplated by this Court in

Weeks Marine, Inc., 575 F.3d at 1361. Again, when a prospective bidder

7

challenges the terms of the solicitation itself, prior to actually submitting a bid, the protestor can establish standing by demonstrating that it suffered a "non-trivial competitive injury which can be redressed by judicial relief." Id. at 1361–62.

Bannum clearly objected to the incorporation of the PREA requirements prior to actually submitting its bid. Bannum submitted a formal Agency Protest with its response to the BOP's request for Final Proposal Revision #3. JA 11109-14. Bannum again raised the same issues in its response to the BOP's request for Final Proposal Revision #4. JA 11152-53.

Pursuant to COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1382 (Fed.Cir. 2012) and Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed.Cir. 2007), a protesting party must "challenge" the solicitation before the award. Neither COMINT or Blue & Gold required that a formal protest be filed; so long as the bidder challenged the solicitation before the award. Even if it were to be determined that Bannum did not comply with the formal requirements of an agency protest, it is clear that Bannum challenged the incorporation of PREA into the solicitation prior to the submission of bids.

Again, Bannum is a contractor who has provided RRC services to the BOP for over 20 years, and had similar ratings, with a negligible price difference. As a matter of fact, Bannum was the incumbent contractor for the BOP in the Tupelo

8

area. JA 10305. Certainly, this is a non-trivial competitive injury which can be redressed by judicial relief; specifically, a resolicitation of the contract.

Bannum's challenge here that Amendment 005 to the solicitation was improper (i.e. did not include sufficient information regarding the implementation of the Amendment, and the BOP's failure to require bidders to provide its methodology for implementing this new portion of the Statement of Work as required by the Solicitation) relates to the very clause that the Lower Court held that Bannum improperly conditioned its bid upon. However, Bannum would still be considered a prospective bidder, in that Bannum would have the opportunity to compete in the resolicitation. Impresa, *supra*.

Furthermore, should Bannum's protest regarding the defective solicitation Amendment be successful, the government would be obligated to rebid the contract, and Bannum could again compete for contract award. Impresa, 238 F.3d at 1334. Under such circumstances, a protestor is deemed to have a "substantial chance" of receiving the award, an economic interest, and standing to challenge the award. Id., *citing* Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir. 1999).

In Allied Tech. Grp., Inc. v. United States, 94 Fed.Cl. 16, 37 (2010), the Government asserted that the protestor lacked standing because the contracting officer found its bid "unacceptable." However, the Court cited to Impresa, stating

9

that "…the focus of a standing inquiry is whether an actual or prospective bidder had a 'substantial chance' of receiving award." Id. It was found that there was no question as to whether the protestor was an "actual bidder," because "…the CO decided to evaluate the merits of [the protestor's] quotation." Id. The Court concluded as follows:

> The Government's assertion that standing necessarily is linked to an offeror's technical acceptability produces an illogical result of potentially insulating from review an agency's decision to declare one proposal acceptable and another unacceptable. If the Court were to accept the Government's position, a procurement official could preclude any review of a competitive award involving two offerors simply by finding the losing offeror ineligible for award. Such a position is contrary to established case law and has been rejected both in the Federal Circuit and this Court. See Rex Serv. Corp., 448 F.3d at 1307–08; Impresa, 238 F.3d at 1334; Dyonyx, 83 Fed.Cl. at 460 ("The Government originally made the senseless jurisdictional argument that an agency arbitrarily can declare a protested proposal to be nonconforming, while accepting the awardee's allegedly nonconforming proposal, and thereby preclude the protestor from standing to challenge the award."). The Court therefore finds that Allied has the necessary standing to proceed with its protest.

Id. at 37-38.

Furthermore, Bannum contends that its bid was not improperly conditioned, as it was accepted by the BOP, which stated in its source selection decision that "Two offers were received in response to solicitation RFP-200-1168-SE. The offers were Bannum, Inc. (Bannum) and Dismas Charities, Inc., (Dismas)." JA 11162. The Source Selection Decision further stated that ***"All offerors' responses to the 'Request for Final Proposal Revisions' have been reviewed and all have***

10

_**been determined to be technically acceptable.**_" JA 11123. Because the subject

proposal was a negotiated procurement, and not a sealed-bidding process,

Bannum's alleged "…failure to comply with the solicitation did not oblige the

[agency] to exclude its proposal, but instead, provided a basis for further

discussions and other steps designed to cure the identified defects." ManTech

Telecom. And Info. Sys. Corp. v. United States, 49 Fed.Cl. 57, 72 (2001).  As

such, Bannum's proposal was subject to further discussions, rather than

disqualification.

  Finally, even if Bannum were to be held to the "direct economic interest"

standard, Bannum has shown "…that there was a substantial chance it would have

received the contract award but for the alleged error[s] in the procurement

process." Info Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319

(Fed.Cir. 2003).  Bannum showed that it was the incumbent contract, and was

ready, willing, and able to perform, with ratings similar to that of Dismas, with a

negligible price difference.

## **CONCLUSION**

  Based on the foregoing, Appellant respectfully requests that the Court

reverse the decision of the COFC, and remand the matter back to the COFC for

consideration of Bannum's protest on its merits.

11

**NON-CONFIDENTIAL**

Dated:       July 24, 2014

                                       Respectfully submitted,

                                       */s/ Joseph A. Camardo, Jr.*
                                       Joseph A. Camardo, Jr.
                                       CAMARDO LAW FIRM, P.C.
                                       *Attorneys for Plaintiff-Appellant*
                                       127 Genesee Street
                                       Auburn, New York 13021
                                       Tel:  315-252-3846
                                       Fax:  315-252-3508
                                       Email:  joecamardo@camardo.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief of Plaintiff-Appellant complies with the Rules of this Court in that it contains 2,478 words as calculated by the word processing system used to prepare this brief.  This is within the limit of 14,000 words set by FRAP 32(a)(7).

/s/ *Joseph A. Camardo, Jr.*
Joseph A. Camardo, Jr.

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on    Jul 24, 2014
by:

     ☐ US mail
     ☐ Fax
     ☐ Hand
     ☒ Electronic Means
       (by email or CM/ECF)

| Joseph A. Camardo, Jr. | /s/ Joseph A. Camardo, Jr. |
|---|---|
| Name of Counsel | Signature of Counsel |

Law Firm   Camardo Law Firm, P.C.

Address   127 Genesee Street

City, State, ZIP   Auburn, New York 13021

Telephone Number   315-252-3846

FAX Number   315-252-3508

E-mail Address   joecamardo@camardo.com

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

# ADDENDUM

# In the United States Court of Federal Claims

### No. 14-140 C

BANNUM, INC.,
      **Plaintiff,**

    v.

**THE UNITED STATES,**
      **Defendant,**
   and

**DISMAS CHARITIES, INC.,**
      **Intervenor.**

                                                     **JUDGMENT**

      Pursuant to the court's Memorandum Opinion and Order of Dismissal, filed March 7, 2014, granting Defendant's and Intervenor's motions to dismiss,

      IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed, without prejudice, for lack of standing.

                                  Hazel C. Keahey
                                  Clerk of Court

**March 11, 2014**          By:    s/Lisa L. Reyes

                                  Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 14-140C
Bid Protest
(Filed Under Seal: March 7, 2014)[1]
(Reissued: March 12, 2014)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
BANNUM, INC.,                                 *
                                              *
        Plaintiff,                            *
                                              *
        v.                                    *   Post-Award Bid Protest; Standing;
                                              *   Nonresponsive Proposal; Non-
THE UNITED STATES,                            *   Compliant Proposal; Firm-Fixed-Price
                                              *   Contract; Interested Party
        Defendant,                            *   Requirement; Direct Economic
                                              *   Interest; Substantial Chance of Award;
        and                                   *   Jurisdiction.
                                              *
DISMAS CHARITIES, INC.,                       *
                                              *
        Intervenor.                           *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Joseph A. Camardo, Jr., Camardo Law Firm, PC, 127 Genesee Street, Auburn, NY 13021, for Plaintiff.

Stuart Delery, Bryant G. Snee, Donald E. Kinner, and Russell J. Upton, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Post Office, Washington, D.C. 20044, for Defendant. Devin Wolak, United States Department of Justice, Civil Division, Commercial Litigation Branch, Of Counsel. Seth Bogin and William Robinson, United States Department of Justice, Federal Bureau of Prisons, Commercial Law Branch, Of Counsel.

Alex D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102-4859, for Intervenor. Daniel S. Herzfeld, Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, VA 22102-4859, Of Counsel.

---

[1] The Court issued this opinion under seal on March 7, 2014, and directed the parties to file proposed redactions by March 12, 2014. The parties timely filed joint proposed redactions. Redactions are indicated by brackets "[ ]."

---

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

---

**WILLIAMS**, Judge.

      This bid protest comes before the Court on Defendant's and Intervenor's motions to dismiss pursuant to Rule 12(b)(1). Plaintiff, Bannum, Inc. ("Bannum"), challenges the terms of a solicitation issued by the United States Department of Justice, Federal Bureau of Prisons ("BOP") and BOP's award of a contract to Intervenor Dismas Charities, Inc. ("Dismas"). Bannum argues that the solicitation was defective because BOP required compliance with the Prison Rape Elimination Act of 2003 ("PREA") without giving guidance regarding the implementation and pricing of this requirement. Bannum further contends that BOP improperly relaxed a mandatory solicitation requirement that performance commence within 120 days of award and that Dismas materially misrepresented its ability to commence performance within that time frame.

      The Government and Intervenor contend that Plaintiff lacks standing to protest because it did not have a substantial chance of award and therefore is not an interested party. Specifically, they contend that because Bannum qualified its price and failed to include any pricing for complying with PREA, even though the solicitation made such compliance mandatory, Bannum's offer was nonresponsive and ineligible for award. Because standing is a threshold issue of subject-matter jurisdiction, the Court addresses this argument at the outset. For the reasons that follow, the Court finds that Bannum is not an interested party and grants the motions to dismiss.

**Background[2]**

      As a prefatory matter, the Court previously issued a decision denying Bannum's motion for a temporary restraining order ("TRO")/preliminary injunction. The incumbent's contract was set to expire on February 28, 2014, and in order to determine whether the awardee, Dismas, should commence performance as scheduled on March 1, 2014, the Court expedited consideration of this matter. Accordingly, the Court orally denied Plaintiff's motion on February 26, 2014, issued its written opinion on February 28, 2014, and notified the parties that it would address the motions to dismiss in a separate opinion. Tr., Feb. 26, 2014.

**The Solicitation**

      On February 22, 2012, BOP issued solicitation number RFP-200-1168-SE ("Solicitation" or "RFP") requesting proposals for Residential Re-entry Center ("RRC") services for male and

---

      [2] The Court derives the background from the parties' exhibits to the pleadings and moving papers, and from the record created at the February 24, 2014 hearing. The Court uses "PX" and "DX" to designate Plaintiff's and Defendant's exhibits, respectively. The Administrative Record has not been filed.

female Federal offenders located in the Tupelo, Mississippi area. PX 1 at 000001-03, 000047. The awardee would provide housing and "furnish all personnel, management, equipment, supplies, and services necessary for performance of all aspects of the contract," including operation of the RRC in a manner consistent with BOP's mission to "protect society by confining offenders in . . . community-based facilities that are safe, humane, cost efficient, appropriately secure, and provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens." Id. at 000047. Plaintiff Bannum is the incumbent.

The Solicitation called for "an indefinite delivery, requirements type contract, with firm-fixed unit prices" to house an estimated 40 full-time offenders annually for a two-year base period, with three option years. Id. at 000006. The Statement of Work reiterated that "[u]nless explicitly stated otherwise, the contractor is responsible for all costs associated with and incurred as part of providing the services outlined in this contract." Id. at 000047. Section B of the Solicitation requested unit pricing for these services on a daily basis per inmate for two base years and three option years. Id. at 000006. The quantity of inmate days for the base years was 29,200 and, for each option year, 14,640. Id. BOP was to evaluate proposals with regard to Past Performance, Technical/Management, and Price, weighing Technical/Management and Past Performance when combined significantly greater than Price. Id. at 000036 § M.5. As between Past Performance and Technical/Management, BOP was to accord Past Performance greater importance. In circumstances where the evaluation of competing proposals in the Technical/Management and Past Performance areas became more equal in rating, Price became more important in "selecting the best value for the Government." Id.

On February 28, 2013, BOP issued Amendment 005 to the Solicitation, stating in pertinent part:

> 1. In Section C, Statement of Work, Chapter 2 — Personnel, Page 20, Section 6. Sexual Abuse Information, after the second paragraph, the following paragraph is added:
>
> "P.L. 108-79, Prison Rape Elimination Act of 2003 (PREA)[,] seeks to eliminate sexual assaults and sexual misconduct of offenders in correctional facilities to include all community based facilities. Administration must maintain a zero-tolerance for sexual abuse, specific policy that addresses PREA compliance will be maintained by contractor. Facility must be in full compliance with PREA standards that apply to Community Confinement Facilities. Compliance with standards will be measured by use of assessment tools such as Published by the National Prison Rape Elimination Commission, "Standards for the Prevention, detection, response, and monitoring of sexual abuse in Community [Corrections",] [www.ncjrs.gov/pdffiles1/226683.pdf,] subsequent revisions, or any other monitoring tool as adopted by the BOP. PREA coordinator must be designated in writing and submitted to the BOP. In accordance with provisions of PREA, contractor must be audited by a certified PREA compliance auditor at no cost to the BOP. Copies of all audit material will be provided to the BOP."

PX 2 at 000150-51 ¶ 14. Amendment 005 did not revise the evaluation criteria.

**Proposals**

On April 23, 2012, Bannum and Dismas each submitted Technical/Management, Business, and Past Performance proposals. PX 3, 4. On August 23, 2012, BOP issued its first request for a Final Proposal Revision, asking that each offeror review its price proposal and submit a final proposal revision. See PX 15 at 1. BOP's request also stated "that the Government intends to make award without further revisions." Id. at 2. Bannum and Dismas each submitted a response. See PX 31 at 31. On February 14, 2013, BOP issued a request for Final Proposal Revision # 2. Pl.'s Mem. Supp. Mot. Prelim. Inj. ("Pl.'s Mot.") 3, Feb. 19, 2014. Bannum and Dismas each submitted a response. PX 20 at 1, 2; see PX 31 at 31.

On February 28, 2013, BOP issued a request for Final Proposal Revision # 3, asking that offerors sign and return Amendment 005 to the Solicitation, which required compliance with PREA. PX 22, 23. The BOP again stated that "the Government intends to make award without further revisions." PX 22 at 1-2. Dismas responded on March 6, 2013, stating: [

] PX 24 (emphasis in original). Bannum responded on March 7, 2013, by submitting a letter to the contracting officer labeled "Final Proposal Revision #3 and AGENCY PROTEST." PX 25. Bannum did not revise its price and, in fact, included a footnote commenting on pricing compliance with PREA:

> However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 5 that BOP presented with this FPR #3. As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with the limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement. Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort. Bannum hereby requests that discussions continue on this requirement and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

PX 25 at 000001 n.1 (emphasis omitted). After requesting additional information regarding PREA compliance, Bannum stated:

> Certainly, there must be a great deal of discussion on this issue prior to execution and full implementation of Amendment 5.
>
> * * *
>
> In the event BOP should decide not to provide additional information, discussions, and technical guidance, and BOP requires that Bannum execute the modification with the PREA contained therein without the ability to fully

4

understand the ramifications of the PREA on the RRC solicitation, contract and SOW, then Bannum hereby protests the inclusion of the PREA as well as the BOP decision to require the same without any information, discussion, or technical guidance. Stated differently, we hereby protest the inclusion of the PREA portion of Amendment 5 into the solicitation subject to the discussion herein and lack of information, specifications and technical guidance from BOP.

Id. at 000005-06. Bannum executed and returned Amendment 005 with its response, but the executed Amendment included a handwritten note stating: "Subject to and limited by Bannum's response to FPR # 3 dated 3/7/2013 and submitted herewith; also, subject to Bannum's reservation of all rights and protest." Id. at 000008.

On July 3, 2013, BOP issued request for Final Proposal Revision # 4 without responding to Bannum's March 7, 2013 "AGENCY PROTEST." PX 27. BOP requested that each offeror review its price proposal and submit a final proposal revision. Id. BOP's request again stated "that the Government intends to make award without further revisions." Id. On July 9, 2013, Dismas responded to Final Proposal Revision # 4, executing and returning Amendment 006 to the Solicitation, submitting a revised subcontracting plan and revising its unit pricing. PX 28 at 000001-02.

On July 10, 2013, Bannum submitted a response to BOP's request for Final Proposal Revision # 4 stating that it did not revise its unit prices. PX 29 at 000001-02. Unlike its Final Proposal Revision # 3, Bannum did not denominate this response as an "AGENCY PROTEST." Bannum did, however, repeat verbatim its footnote requesting discussions and communicating that its prices did not reflect pricing for PREA compliance. Id. at 000001 n.1; see PX 25 at 000001 n.1.

**The Award**

BOP did not conduct any further discussions or issue any additional requests for Final Proposal Revisions. On July 19, 2013, the contracting officer issued a Source Selection Decision ("SSD") rating the proposals as follows:

|  | Dismas | Bannum |
|---|---|---|
| Past Performance | Blue/Very Good | Blue/Very Good |
| Technical/Management | Blue/Very Good | Green/Acceptable |
| Price | $5,212,222.40 | $5,339,200.00 |

PX 31 at 1, 8, 15, 23, 31, 35. The contracting officer found in the SSD that both Dismas' and Bannum's prices were fair and reasonable. Id. at 31. On August 26, 2013, BOP awarded Dismas the contract ("Contract"). PX 34.

**Bannum's GAO Protest and BOP's Stop Work Order**

On September 4, 2013, Bannum filed a protest with the Government Accountability Office ("GAO"), claiming: "(1) the BOP improperly relaxed the Solicitation requirements for

5

Dismas and not for other offerors in the competitive range, (2) Dismas' offered price was unreasonably low, and (3) the BOP's assessment of Bannum's Technical/Management rating was unreasonable and was in violation of the stated Evaluation Criteria." Def.'s Mot. Dismiss App. A258, Feb. 23, 2014. Bannum's GAO protest did not challenge Amendment 005's incorporation of PREA. Bannum's GAO protest triggered an automatic stay pursuant to the Competition in Contracting Act, 31 U.S.C. § 3553(d)(3) (2012). On September 6, 2013, BOP issued Dismas a stop work order. DX 30 at 1-2. To continue RRC services in Tupelo through December 31, 2013, and then to January 31, 2014, BOP exercised two options on Bannum's July 31, 2013 contract. Pl.'s Mot. Ex. 3, 4. On December 11, 2013, GAO denied in part and dismissed in part Bannum's protest. Def.'s Mot. Dismiss App. A267-72. On December 12, 2013, the contracting officer issued Dismas Contract Modification 0002 to cancel the stop work order. DX 31. To maintain RRC service in Tupelo through February 28, 2014, BOP again exercised its option to extend Bannum's July 31, 2013 contract through February 28, 2014. Pl.'s Mot. Ex. 5.

## Discussion

The Tucker Act confers jurisdiction on this Court "to render judgment on an action by an interested party objecting to a solicitation . . . or the award . . . ." 28 U.S.C. § 1491(b)(1) (2012). Hence, only an "interested party" has standing to object to a solicitation or award in this Court. "Standing is a question of subject matter jurisdiction . . . ." Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013) (citing S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005)) (equating the Tucker Act's "interested party" requirement with "Article III's 'concrete and particularized injury' requirement."); see also Night Vision Corp. v. United States, 68 Fed. Cl. 368, 392 (2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)), aff'd, 469 F.3d 1369 (Fed. Cir. 2006). Jurisdiction is a threshold issue that the Court must address before examining the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (citation omitted); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

The party invoking jurisdiction "bears the burden of establishing [the] elements [of standing]." Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (alterations in original) (quoting Lujan, 504 U.S. at 561). Though the Tucker Act does not define "interested party," the Federal Circuit has explained that the "interested party" inquiry has two prongs: (1) whether one is "an actual or prospective bidder" (2) "whose direct economic interest would be affected by the award of the contract." Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

"To prove a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract." Id. (citing Rex Serv. Corp., 448 F.3d at 1308); see also Info. Tech. & Applications Corp., 316 F.3d at 1319 (citing Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001), cert. denied, 534 U.S. 1113 (2002)). In a bid protest the Court performs this "substantial chance of award" -- or prejudice -- inquiry twice: first, in the context of ascertaining its jurisdiction and second, in evaluating the merits of the protest. Archura LLC, 112 Fed. Cl. at 497; Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 696

6

(2010) (recognizing that "Federal Circuit precedent has used the doctrine of prejudice in two distinct ways, the first relating to the pre-decisional standing inquiry of 'allegational prejudice' [and] the second corresponding to '[Administrative Procedure Act] prejudice.'").

The Government acknowledges that Bannum "satisfies the first prong" of the standing inquiry because Bannum was an actual bidder, but contends that Bannum fails the second prong because "procuring agencies should make awards only to offerors that submit responsive offers" and Bannum's proposal was nonresponsive.[3] Def.'s Mot. at 26-27 (citing ManTech Tel. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 71, (2001), aff'd, 30 Fed. App'x 995 (Fed. Cir. 2002). The Government and Dismas contend that Bannum's proposal was nonresponsive or non-compliant because the RFP required firm-fixed unit prices but Bannum qualified its proposal by expressly representing that its prices did not reflect pricing associated with Amendment 005, i.e. PREA compliance. Def.'s Mot. Dismiss at 26-27 (citing generally FAR 16.202-1 as defining firm-fixed-price contracts as not subject to adjustment); Dismas' Mot. Dismiss at 5-6. Dismas emphasizes that "[a]n offeror that submits a non-compliant offer has no standing to protest an award, because it has no chance of receiving the award." Id. (citing A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 138 (2006); Philips Healthcare Informatics, B-400733.8 et al., 2009 CPD ¶ 246, 2009 WL 4547021, at *2 (Comp. Gen. Dec. 2, 2009); Optical Sys. Tech., Inc., B-292743.2, 2004 CPD ¶ 231, 2004 WL 2584878, at *4 (Comp. Gen. Nov. 12, 2004)).

The Government and Dismas are correct. In response to Amendment 005, which added the requirement for PREA compliance, Bannum submitted a letter labeled "Final Proposal Revision #3 and AGENCY PROTEST" which included a footnote stating:

---

[3] The Court recognizes that "nonresponsive" is a term of art typically used in the context of sealed bidding. The term, however, has permeated the universe of negotiated procurements where it refers to proposals that fail to comply with material requirements of the solicitation. See, e.g., Excel Mfg., Ltd. v. United States, 111 Fed. Cl. 800, 806 n.3 (2013) ("The court notes that while 'responsiveness' and 'non-responsiveness' are terms used by the FAR with respect to sealed bids . . . the elimination of proposals which fail to conform to material requirements of a solicitation is likewise sanctioned by the FAR in negotiated procurements."); A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 138 (2006) (holding, in a negotiated procurement, that the protestor's bid was nonresponsive for failure to include a bid bond as required by the solicitation.). In its motion, Dismas refers to Bannum's proposal as "non-compliant" which this Court uses interchangeably with "nonresponsive." The same rationale for excluding "nonresponsive bids" in sealed procurements underlies the exclusion of "non-compliant" proposals in negotiated procurements. See John Cibinic, Jr., Ralph C. Nash, Jr. & Christopher R. Yukins, Formation of Government Contracts 527 (4th ed. 2011) ("This responsiveness requirement is derived from the statutory provisions providing that award be made to the bidder 'whose bid conforms to the solicitation.'") (emphasis in original) (quoting 10 U.S.C. § 2305(b)(3); 41 U.S.C. § 3702(b)); cf. E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed. Cir. 1996) ("In negotiated procurements, a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." (citation omitted)).

However, these prices do not, and cannot, reflect any consideration for the effects of Amendment 5 that BOP presented with this FPR #3. As is discussed elsewhere in this response to the FPR, it is not remotely possible to begin to attempt to formulate a cost or price proposal for the addition of PREA and its requirements at this point in time and with the limited amount of information we have been given, not to mention the lack of any technical guidance on this new requirement. Accordingly, an enormous amount of information is required prior to pricing this new contract requirement which itself may require untold amounts of extra work time, services, efforts, and perhaps the necessity for consultants, auditors, not to mention additional executive and management level staffing and effort. Bannum hereby requests that discussions continue on this requirement and that we be provided an[] adequate opportunity to respond to the new requirement and to amend our proposal as needed.

PX 25 at 000001 n.1. After requesting additional information regarding how BOP would assess PREA compliance, Bannum protested "the inclusion of the PREA portion of Amendment 5 into the solicitation subject to the discussion herein and lack of information, specifications and technical guidance from BOP." Id. at 000006 (emphasis omitted). In executing Amendment 005, Bannum included a handwritten note stating: "Subject to and limited by Bannum's response to FPR #3 dated 3/7/2013 and submitted herewith; also, subject to Bannum's reservation of all rights and protest." Id. at 000008. In its final proposal revision Bannum reiterated its footnote that stated its pricing did not include the new PREA requirements. PX 29 at 000001 n.1.

Bannum's proposal with its footnoted pricing caveat does not constitute an offer that the Government could accept. There was no meeting of the minds. Bannum made clear it would need to formulate a price proposal for the addition of PREA and that its offer did not include such pricing. The Solicitation, however, required unit pricing representing the daily cost to maintain an inmate at the RRC. The Government made compliance with PREA mandatory and sought firm-fixed pricing for the entirety of the Solicitation's requirements -- not pricing for everything except PREA compliance. Because Bannum omitted pricing for PREA compliance, its offer was nonresponsive -- or non-compliant -- and could not form the basis of an award.

Bannum contends that its bid was not qualified, as it submitted a specific price that would have bound Bannum had BOP selected its bid. Pl.'s Resp. Add'l Auth. 1, Feb. 25, 2014. In the Court's view, given Bannum's responses to Final Proposal Revision # 3 and 4, Bannum had represented that its pricing did not encompass PREA compliance and injected uncertainty as to whether it would comply with PREA. In arguing its pricing was not qualified, Bannum relies upon the statement in the SSD that Bannum's price was fair and reasonable. PX 31 at 31. The fact that the Source Selection Authority did not deem Bannum's offer nonresponsive does not, however, preclude this Court from assessing the responsiveness of Bannum's offer in the context of examining Bannum's standing.

To the extent that Bannum suggests that this Court cannot deviate from the arbitrary and capricious standard of review in determining standing, Bannum misunderstands the parameters of this Court's ability to determine its jurisdiction. It is true that under § 1491(b)(4) this Court must review the agency's procurement decision pursuant to the standards set forth in the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706. In assessing Bannum's standing, however, this Court is not reviewing the decision of an agency, but is making a threshold determination as to whether it can hear this case. See Steel Co., 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation omitted)); Labatt Food Serv. Inc., v. United States, 577 F.3d 1375, 1378-79 (Fed. Cir. 2009) (citing Myers, 275 F.3d at 1369-70 ("[S]tanding is a threshold jurisdictional issue.")). A plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). A plaintiff must present "competent proof" and demonstrate affirmatively that the Court has jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

Jurisdiction here is predicated on a determination of whether Bannum had a substantial chance of award -- not on a review of an agency decision. In contrast to the Court's limited scope of review under the APA, "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged." Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999). Thus, contrary to Bannum's suggestion, in assessing standing, this Court is not bound by the finding in the Source Selection Decision or required to apply the APA standard of review.

In an uncannily similar case, Dismas Charities, Inc. v. United States, 75 Fed. Cl. 59 (2007), the Court of Federal Claims dismissed Dismas' post-award bid protest for lack of standing where Dismas submitted a 240-day "revised" start-up plan to BOP when the solicitation required a 120-day start-up period. The court in Dismas Charities noted that, even though the Source Selection Decision called Dismas' proposal technically acceptable, Dismas could not "excuse its failure to properly submit a [requirement] by the agency's lack of diligence in removing a nonresponsive bid from consideration." Id. at 62 (alteration in original) (quoting A & D Fire Prot., 72 Fed. Cl. at 140). Ultimately the court found that Dismas submitted a final proposal revision that did not conform to the solicitation requirements. As a result, the court ruled that Dismas did not have a substantial chance of contract award and could not be an "interested party" for purposes of this court's bid protest jurisdiction. Id. The court in Dismas Charities, therefore, dismissed the case for lack of standing without deference to BOP's finding in the SSD that Dismas had submitted a technically acceptable proposal. Id. at 61-62. Here, as in Dismas Charities, the Court must ascertain its own jurisdiction and, in doing so, is not bound by an agency's mistake in overlooking a non-compliant proposal.

## Conclusion

Bannum has shown, and the Government has admitted, that Bannum was an actual bidder, thereby satisfying the first prong of the interested party requirement. Bannum has not demonstrated that it had a substantial chance of winning the contract -- a direct economic interest -- thereby failing the second prong of the interested party requirement. If Bannum were to win on the merits, BOP could not award Bannum the contract because Bannum did not submit a proposal for "an indefinite delivery, requirements type contract, with firm-fixed unit prices" that complied with all mandatory requirements. Therefore, Bannum lacks standing, and this Court does not have subject-matter jurisdiction.

9

The Court **GRANTS** the Defendant's and Intervenor's motions to dismiss. The Court directs the Clerk of Court to dismiss this action without prejudice for lack of standing.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**